ST. PAUL, J.
 

 These two defendants were jointly indicted as follows:' W. B. Hatten for forging and uttering as true the indorsement of J. R. Hat-ten, the grandfather of W. B. Hatten and father of Alvin Hatten, to two certificates of deposit issued by the People’s Bank of Chat-ham, La., aggregating $1,100; Alvin Hatten with having procured his son to do so; and both with having conspired for that purpose —all with intent to defraud the said People’s Bank, the said J. R. Hatten, and the presumptive heirs of said J. R. Hatten.
 

 Both defendants were convicted as charged and duly sentenced, and both have appealed.
 

 In the course of the trial they reserved thirty-one bills of exception. Their appeal, was submitted on brief only, and in their brief their able counsel say, with commendable appreciation of the best interests of their clients: “We shall not attempt to argue all the 31 bills of exception, for the reason that we do not care to
 
 dromi our ease
 
 with this many bills * * *. We believe that a perusal of the bills [not argued] will disclose merit in each of them,
 
 and perhaps reversible error,
 
 but for the reason stated we will not attempt to discuss them.” (Italics ours.)
 

 We have
 
 perused
 
 the bills not argued and see no merit whatever in them; and hence shall confine our opinion to those bills to which counsel have wisely confined their argument, as follows:
 

 Bill No. 9. The alleged forgery wás committed on February 8, 1930. The state was attempting to show that shortly thereafter Alvin Hatten deposited to his own credit, in the First National Bank of Ruston, $1,000. The cashier of that bank was asked, “Mr. Stinson, have you, occasion to remember from the records of the bank, what deposit, if any, was made in that bank by Alvin Hatten during February 1930?” To which the witness-answered that he had made a deposit of $1,-000 on February 8, 1930.
 

 At the proper time, before the. witness answered, defendants objected to the testi
 
 *465
 
 mony on the ground: (1) That it would be hearsay; (2) that the records of the bank would be the best evidence; (3) that the evidence was irrelevant. To which the trial judge says in his per curiam, and the record does not contradict him: “The witness testified that Alvin Hatten made a deposit of ¥1,000 in said bank on February 8th 1930; that he (the witness) did not personally handle the transaction but referred it to an assistant, who did so; but that witness stood by and saw and heard the whole transaction. Witness was asked if he had refreshed his memory from the bank records, and he answered that he had.” We think it evident that the testimony was relevant as a circumstance tending to show what became of the money alleged to have been unlawfully withdrawn from the Chatham Bank by W. B. Hat-ten at the alleged solicitation of Alvin Hat-ten ; that the evidence of a witness who saw and heard the whole transaction was
 
 better
 
 evidence than the bare records of the bank, which standing alone might have been inadmissible ; that the evidence was
 
 not
 
 hearsay.
 

 Bill of Exception No. 10. L. B. Hat-ten, a state witness, was asked on cross-examination by the defendants: “Is it not true that your father (W. W. Hatten) knew, when he left Winnboro, that his father, your grandfather (J. B. Hatten) was dead?” Objected to by the state as irrelevant, and objection sustained. We cannot see, and nothing in the bill shows, what relevancy thi^ had to the guilt or innocence of the accused.
 

 Bill of Exception No. 11. This exception was taken to the refusal of the court to allow C. M. Womack, cashier of the People’s Bank of Chatham, to answer whether he would or would not have permitted the certificates of deposit to be cashed had he not had good reason to believe that W. B. Hatten had authority to transact business with the bank for J. B. Hatten. We fail to see the relevancy. The question before the jury was not whether the cashier of the bank believed that W. B. Hatten was his grandfather’s agent, but whether he was such in point of fact.
 

 Bill of Exception No. 14. C. T. Griggs, a state witness, was allowed, over defendants’ objection, to state the contents of a letter written to Alvin Hatten by one Mr. Ayres, an attorney, who had first been spoken to by Alvin Hatten and afterwards by the other sons of J. B. Hatten; which letter the witness stated to be as follows: “Well, as near as I can call to mind, and I think I have got it about right, Mr. Ayres wrote Mr. Alvin Hat-ten that it would be better to compromise this thing rather than let it run into trouble and have a lawsuit; and he said that he would rather' lose a fee than have anything to do with it.”
 

 It is manifest that this was highly prejudicial to these defendants. Whatever knowledge Mr. Ayres had of the matter had been gained in part at least from the other sons of J. B. Hatten, who are now prosecuting Alvin and his son. Their representations to Mr. Ayres must, of course, have been highly unfavorable to Alvin, as his letter shows; and it was wholly improper to place before the jury the manifestly unfavorable opinion which he had formed. This bill was well taken.
 

 Bills of Exception Nos. 15, 16, 17. When Mrs. Alice Sandiage, a daughter of J. B. Hat-ten, was
 
 on the
 
 stand as a witness for the de
 
 *467
 
 tense, she was asked by the defendants: (1) Whether W. W. Hatten, one of the sons of J. R. Hatten, had not threatened to attach the funds in bank of J. R. Hatten; (2) whether her father had not spoken to her of the purposed attempt of some of his sons to attach his funds; and (3) whether her father had not told her he had his money in his pocket and no attempt to garnishee it would avail. Objected to as irrelevant; sustained.
 

 As the defendants claimed that J. R. Hatten had authorized the withdrawal of his funds from the bank, it was clearly relevant to show, if defendants could, that he had a reason for authorizing such withdrawal. As the defendants claimed the funds, when withdrawn by them, had been turned over to J. R. Hatten, it was clearly relevant to show, if defendants could, that he had admitted having come into possession of said funds. These exceptions are well founded.
 

 Bills of Exception Nos. 18, 19, 20. These bills were reserved to the refusal to allow Lawson Thompson, a witness for defendants, to testify: (1) 'Whether he heard J. R. Hatten request W. B. Hatten to go to the Bank at Chatham and draw his money for him; and (2) whether he saw W. B. Hatten give his grandfather the money drawn from the bank. Objected to as irrelevant; sustained. For the reasons given under bills 15, 16,17, these objections should have been overruled. These bills are well founded.
 

 Bill of Exception No. 23. Jim Fatheree, a witness for the defense, was not allowed to testify that J. R. Hatten had told him that some of his sons expected to garnishee his money in bank, but would be disappointed because he already had it with him at that time. This testimony was objected to as irrelevant. It should have been admitted; and the fact that it was also objected to as “res inter alios acta,” “self-serving declaration,” “hearsay,” etc., added nothing to the value of the objection. See our ruling on bills 15, 16, 17, 18, 19, 20, supra.
 

 Bills of Exception Nos. 25, 26, 27, 28, 29, 30. These all relate to special charges requested by the defendant and refused, all of which were either covered by the general charge or inapplicable to the ease as
 
 then
 
 presented to the jury. They call for no ruling by us at this time.
 

 The errors which we have indicated above require a reversal at our hands.
 

 Decree.
 

 For the reasons assigned, the verdict and sentence are set aside, and this case is now remanded for a new trial according to law.